THE STATE, EX REL. JOEL WILSON, ABEL SHOTWELL, AND EDEN HAYDOCK v. ISAAC M. LONGSTREET, GARRET BERRY, AND JOHN J. HIGH.

1. Under the charter of the city of Rahway, commissioners were appointed to assess the benefits and expenses for the widening of Milton avenue. In making their report, the commissioners failed to estimate the value of sixteen feet of land belonging to S. F. On application for a writ of *mandamus*, directed to the said commissioners, to proceed to assess the said sixteen feet—*held*, that no authority being given anywhere by the charter to the board to amend their report when once made and filed, the application must be denied.

2. If the commissioners, in making the assessment, have mistaken the location, frontage, depth, or any other element essential to the proper assessment of damages, that fact can only be shown in a proceeding to vacate the assessment.

On application for *mandamus*.

Argued at November Term, 1875, before Justices SCUDDER and REED.

For the relators, *Leslie Lupton*.

For the defendants, *J. Henry Stone*.

The opinion of the court was delivered by

REED, J.   Milton avenue, in the city of Rahway, was, in the year 1804, laid out as a street forty feet in width.

In March, 1863, the board of street commissioners, appointed by section thirty-three of the act of 1863, (*Laws,* 1863, *p.* 289,) recommended to the mayor and common council of Rahway the widening of said avenue, making it four rods wide, as indicated on a certain map alluded to in said recommendation as map " *B.*"   Notices were published that parties would be heard at a certain time and place before the street committee.   After such hearing, the said committee recommended that the said widening be carried into effect. The common council, on the 14th of July, 1863, resolved that said avenue be widened, altered, and extended, in accordance with the recommendation of the committee on streets.

By the thirty-second section of the charter of 1858, Isaac M. Longstreet, Garret Berry, and John J. High were appointed commissioners to assess benefits and expenses for widening said avenue from Railroad avenue to Main street. They filed their report on the 31st of October, 1864.   Among those to whom damages and benefits were assessed and estimated, was Solomon Freeman.   In 1865 the relators succeeded Freeman in his title to the land included within the limits of the widened street.   The proceedings for condemna-

tion, it will be remembered, contemplated a widening to the extent of sixty feet. The city did not open it to its full width until about August, 1868.

At that time the relators raised a question concerning the strip of land sixteen feet in width, running the frontage of these lands on the said street, and at that time first enclosed and occupied by the city as a part of said Milton avenue.

The question arose in this way: It appears that, on account of the original forty feet street having been narrowed, or, for some other cause, it was necessary to condemn twenty-nine feet of the land of Solomon Freeman to make Milton avenue sixty-six feet in width.

When the commissioners made their assessment, they were under the impression that the street was a fifty, instead of a sixty-six feet street.

In making their estimate of damages and benefits, they had in mind that only thirteen feet of Freeman's land was included in the widened street. The additional sixteen feet, which were really included, they did not regard. For this strip of land the relators then claimed and now insist they should be compensated.

In 1873 they applied to this court, and obtained the allowance of an alternative *mandamus*, directed to the mayor and common council of Rahway, commanding them to appoint three electors of the city of Rahway as commissioners of assessments, who should make an assessment of damages sustained by the said relators, by reason of the taking and appropriating of these lands, &c., or show cause.

The common council, in their return, set out the resolutions of the street committee and of the common council, the appointment of commissioners and their return of an assessment in favor of Solomon Freeman, and a tender of the amount.

The relators pleaded to said return that the commissioners did not estimate the value of the said sixteen feet of land.

The issue formed was sent down to the Union circuit for trial by a jury, and the finding was, that the commissioners did not estimate the value of the land in the alternative writ

mentioned, or make any report thereof to the common council.

On the coming in of the *postea*, a motion was made for a peremptory writ, which motion was denied.

The motion now is, that a writ be directed to the defendants, the members of the former commission, to proceed to assess the sixteen feet.

It is admitted that these sixteen feet were included in the proceeding for condemnation. Indeed this admission is essential, to afford any ground for this application.

There can be no authority to assess upon adjoining landowners the damages resulting from the occupation of these sixteen feet, except a proceeding under the charter of Rahway, with all the notices, resolutions, and formalities required by that act. All the proceedings for condemnation are admittedly regular, up to the time of the assessment.

The return manifests no error. It shows an estimation for damages and for benefits for the land of Solomon Freeman condemned by the proceedings.

The writ to the common council, to appoint a new commission, was obviously refused upon the ground that, as long as this assessment stood unreversed, it was conclusive upon any collateral application.

Without regard to other difficulties in the way of allowing a writ to the old commissioners upon the papers now in the cause, there appears an insurmountable obstacle to the allowance of the writ in any event. Such an allowance could be justified only upon one of two grounds : either that they have the power to amend or revise their report already made, or that they can make a distinct report for the assessment of this strip, while the present report stands.

As to the first ground, it is sufficient to say, that there is no authority anywhere given to the board to amend their report when once made and filed. By section thirty-four of the charter of 1858, when an assessment is in whole or in part set aside, new commissioners may be appointed to report anew as to the part set aside.

So far as this board is concerned, their assessment is a finality, until it is set aside by proceedings taken directly for that purpose.

But the assessment is not only final, so as to prevent a reassessment, but it is conclusive that all the interest of Solomon Freeman in his land condemned, was estimated in that assessment. The rule which forbids a suitor bringing a multiplicity of actions to recover a claim growing out of a cause which is an entirety, on principle extends to a case like this.

If, in the former instance, a verdict is rendered for an injury to realty, and the jury have mistaken the dimensions of the property described in the pleadings, or the portion of property for an injury to which damages should be awarded, the remedy is to have the verdict set aside, and the entire question passed upon by a new jury. While the first judgment stands, it is conclusive as to the fact that all the damages were included in it. The principle is elementary, but is illustrated by the cases cited in *Freeman on Judgments*, §§ 238–241.

It was applied to actions against a railroad company for the use of an insurance company, where there was already a recovery by the owner of the property insured. *Weber* v. *The Morris and Essex R. R. Co.*, 7 *Vroom* 213.

In the present instance there is a provision made for compensation to the owner of lands taken *in invitum*.

The proceeding for the condemnation is single. All the right, title, and interest of the owner is intended to be compensated for by a single assessment. The assessment in this case shows an assessment to Solomon Freeman. If the commissioners, in making that assessment, have mistaken the location, frontage, depth, or any other element essential to the proper assessment of the damages, that fact can only be shown in a proceeding to vacate the assessment.

This conclusion being reached, the application for the writ of *mandamus* to the board, directing them to estimate damages for any land of Solomon Freeman included in the proceedings for condemnation, must be denied.